**IN THE UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

STEVEN CARRUBA

PLAINTIFF

vs.                                                                CIVIL ACTION NO. 4:19-cv-2427
                                                                   JUDGE_____

LIBERTY LLOYDS OF TEXAS INSURANCE
COMPANY

DEFENDANT

**PLAINTIFF'S ORIGINAL COMPLAINT
JURY TRIAL DEMANDED**

**COMES NOW, STEVEN CARRUBA** (hereinafter, referred to as Plaintiff), and file this, his **Original Complaint**, and for causes of action against **LIBERTY LLOYDS OF TEXAS INSURANCE COMPANY ("LIBERTY LLOYDS")** (hereinafter, referred to as "Defendant"), would show unto the Court and the jury the following:

**PARTIES AND SERVICE OF PROCESS**

1.      Plaintiff **STEVEN CARRUBA** owns the property located at 1438 Freedonia Dr., Houston, Texas 77055 that is the subject of this lawsuit and is situated in Harris County, Texas.

2.      Defendant, **LIBERTY LLOYDS** is a domestic insurance company registered to engage in the business of insurance in the state of Texas with its principal place of business located in Boston, Massachusetts.  This Defendant may be served with personal service by a process server, by serving its Attorney for Service, **Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701-3218.**

1

## STATUTORY AUTHORITY

3. This suit also brought in part, under the Texas Insurance Code, Chap. 541.151 *et seq.,* Chap. 541.051 *et seq.*, Chap. 542.051 *et se.,*. and Tex.Civ. & Rem. Code §38.01 *et seq.*

## JURISDICTION

4. This Honorable Court maintains subject matter jurisdiction over this matter, pursuant to 28 U.S.C. § 1332, based on complete diversity of citizenship between the parties. The amount in controversy exceeds the minimum jurisdictional limits.

## VENUE

5. This Honorable Court maintains venue under 28 U.S.C. § 1391(b)(2), being the judicial district of the location of the property that is the subject of this action.

## NOTICE AND CONDITIONS PRECEDENT

6. Defendant has been provided notice, in writing, of the claims made by Plaintiff in this complaint, including a statement of Plaintiff's actual damages and expenses in the manner and form required by Tex. Ins. Code § 542A.003.

7. All conditions precedent necessary to maintain this action and in order to maintain claim under the insurance policy in question have been performed, occurred, or have been waived by Defendant.

## FACTS

8. This lawsuit arises out of the following transactions, acts, omissions, and/or events. On or about July 7, 2017, Plaintiff's property sustained damages as a result of a fire.

9. Plaintiff submitted a claim to Defendant, **LIBERTY LLOYDS** pursuant to the contract of insurance for damages as a result of the fire and asked Defendant

**LIBERTY LLOYDS** to honor its contractual obligations and cover the cost of repairs to the property and contents.

10.     Defendant, **LIBERTY LLOYDS,** accepted the Plaintiff's claim and assigned a claim number of HD900-035817464.

11.     Defendant, **LIBERTY LLOYDS** assigned Sandra Parker to investigate and evaluate the claim. Sandra Parker then assigned adjuster Glenn Lewis, to inspect, investigate and evaluate the claim.

12.     Glenn Lewis performed an inspection of the subject insured property and provided a results-oriented evaluation of the damages on August 9, 2017. Mr. Lewis provided an initial estimate of damages with a replacement cost value of $120,194.38, which underscoped and undervalued the Plaintiff's damages. The estimate provided for only partial repair of the damages the property sustained as a result of the fire.

13.     Glenn Lewis later provided a supplemental estimate of damages with a replacement cost value of $150,155.50. This estimate added overhead and profit, an additional $379.20 for the central air conditioning system, but also had certain line items removed from the estimate. Plaintiff's did not agree with Mr. Lewis' assessment of the damages to their property. The supplemental estimate still underscoped and undervalued the Plaintiff's damages.

14.     Defendant, **LIBERTY LLOYDS** relied upon Mr. Lewis' inaccurate and unreasonable report to underpay the Plaintiff's damages. Furthermore, Defendant, **LIBERTY LLOYDS** failed to accept or deny coverage for the remaining damages in writing within the statutory deadline.

15. Plaintiff then hired Public Adjuster Jay Etheredge to properly investigate and evaluate the claim.

16. Jay Etheredge determined that Plaintiff's property and contents damages were grossly undervalued by Mr. Lewis and **LIBERTY LLOYDS**. Plaintiff's contents were found to be a total loss.

17. On or about December 18, 2017, Sandy Parker of **LIBERTY LLOYDS** sent a letter to the insured advising they had attempted to reach an agreed cost of repair with public adjuster Jay Etheredge but had not been able to do so because the difference of the estimates exceeded $100,000.00. Sandy Parker advised that they were demanding appraisal and naming Bob Hovanec of West Fire, Inc. as **LIBERTY LLOYDS**'s appraiser.

18. Also, on January 10, 2018, Sandy Reiser of **LIBERTY LLOYDS** sent an email to the Plaintiff advising that the appraisal process would not be commenced, in an effort to continue working with the public adjuster to resolve the claim. No agreement has been reached and **LIBERTY LLOYDS** has continued to deny full payment of Plaintiff's property damage claim.

19. Brian Haden of Haden Claims Services inspected the Plaintiff's property. Mr. Haden determined that the damages to Plaintiff's property resulting from the fire were $266,575.13.

20. Based on the improper, inadequate, and incomplete investigation of **LIBERTY LLOYDS**, and its representatives, the Plaintiff's dwelling damages were only estimated at $150,155.50 before depreciation and deductible. Defendant failed to accept or deny coverage for Plaintiff's additional property damages.

21. Roadrunner Restoration, Defendant's 3rd party vendor, was retained to mitigate water damages to the property, clean furniture and pack and store the contents. On or about July 10, 2017, Stephanie Brown of Roadrunner Restoration provided an estimate with the total cost for these services as $22,339.41.

22. Roadrunner Restoration did not fully clean the furniture items that were entrusted to them for cleaning and performed a substandard job in packing the contents and moving them to storage. After cleaning, the contents still smelled of smoke and contained residue from the fire.

23. In a letter to Plaintiff, dated January 18, 2018, Sandy Reiser requested Plaintiff's consent to pay Roadrunner Restoration. Plaintiff did not provide consent. However, **LIBERTY LLOYDS** then unreasonably and improperly made payment to Roadrunner Restoration for inadequate work and refused to pay Plaintiff for the damaged contents that Roadrunner had not properly cleaned.

24. First Team, Defendant's 3rd party vendor, was retained to clean Plaintiff's clothing. First Team did not fully clean the clothing items that were entrusted to them for cleaning and performed a substandard job in cleaning the clothing. After cleaning, the contents still smelled of smoke and contained residue from the fire.

25. **LIBERTY LLOYDS** unreasonably and improperly made payment to First Team for inadequate work and refused to pay Plaintiff for the damaged clothing that First Team had not properly cleaned.

26. In January 2018, **LIBERTY LLOYDS** retained Mr. Buddy Barrows of Meridian Consultants to inspect the damaged contents. Plaintiff's public adjuster and Mr. Barrows inspected the contents located at the property on or about January 10, 2018 and

then recommended to Andrew Gilmore that a joint inspection of the contents be conducted with **LIBERTY LLOYDS'** adjuster.

27. On or about January 19, 2018 Andrew Gilmore sent an email to Plaintiff's public adjuster advising that he agreed with Mr. Barrows and Sandy that a joint inspection of the contents should be conducted. In a letter to Plaintiff, dated January 18, 2018, Sandy Reiser advised that a joint inspection of the total loss personal property would be needed to resolve the claim.

28. Plaintiff's public adjuster attempted to schedule the joint reinspection of the contents during multiple communications with **LIBERTY LLOYDS'** adjusters and consultant. They tentatively agreed to dates, then Andrew Gilmore unreasonably delayed the joint reinspection. Although **LIBERTY LLOYDS'** adjusters and its consultant had agreed to the joint reinspection and Sandy Reiser advised that it would be needed to resolve the claim, it never occurred. Instead, Plaintiff received a letter, dated February 13, 2018, from Sandy Reiser advising that the joint inspection was no longer warranted and they were denying the total loss of the contents. Defendant's denial of the contents was unreasonable and without a full, fair and prompt investigation of the claim.

29. Defendant has also delayed full payment of Plaintiff's additional living expenses claim.

30. To date Plaintiff has yet to receive full payment on his fire claim.

31. Defendant, **LIBERTY LLOYDS** ignored the information provided by the Plaintiff, the public adjuster and Haden Claims Services. Instead, Defendant, **LIBERTY LLOYDS** chose simply to only rely the portions of its adjuster's, consultant's, and

6

vendors' reports which supported the results-oriented investigation and coverage decisions completed by Mr. Lewis, Ms. Reiser and Mr. Gilmore.

32. Defendant, **LIBERTY LLOYDS** failed to perform its contractual obligation to compensate Plaintiff under the terms of the Policy.

### CAUSES OF ACTION AGAINST DEFENDANT, LIBERTY LLOYDS - COUNT I - BREACH OF CONTRACT

33. Each of the foregoing paragraphs is incorporated by reference in the following.

34. On February 28, 2017, Plaintiff and Defendant **LIBERTY LLOYDS** executed a valid and enforceable written insurance contract providing insurance coverage to the insured locations at 1438 Freedonia Dr., Houston, Texas 77055 from the peril of fire among other perils.

35. All damages and loss to the Plaintiff's property were caused by a direct result of a peril for which Defendant **LIBERTY LLOYDS** insured the Plaintiff pursuant to the policy herein, specifically, the peril of fire resulting in property damage to the subject insured properties.

36. Defendant, **LIBERTY LLOYDS** sold the subject insurance policy to Plaintiff insuring the subject insured property in its "as is" condition.

37. Plaintiff suffered a significant loss with respect to the property at issue and additional expenses as a result of the fire damage.

38. Plaintiff submitted a claim to Defendant, **LIBERTY LLOYDS** pursuant to the contract of insurance for damages as a result of the fire damage.

39. Plaintiff provided Defendant, **LIBERTY LLOYDS**, with proper notice of damage to the exterior, interior and contents of the subject insured property.

40. Defendant, **LIBERTY LLOYDS** ignored the information provided by the public adjuster, Jay Etheredge and other information provided by Plaintiff and chose simply to only rely on its own consultant.

41. **LIBERTY LLOYDS** by and through its adjusters and representatives have failed to properly evaluate the damages resulting from the covered cause of loss.

42. **LIBERTY LLOYDS** by and through its adjusters and representatives failed to retain the appropriate experts and/or consultants to evaluate the fire damages to the subject property.

43. As of this date, **LIBERTY LLOYDS** by and through its adjusters and representatives have failed to pay for the fire damages to Plaintiff's property.

44. Plaintiff have attempted on numerous occasions to obtain full and complete payment for covered losses pursuant to the insurance policy.

45. Defendant, **LIBERTY LLOYDS**, acting through its agents, servants, representatives and employees has failed to properly investigate, evaluate and adjust Plaintiff's claim for benefits in good faith and has further failed to deal fairly with Plaintiff.

46. Defendant, **LIBERTY LLOYDS** has failed and refused to evaluate the information and surrounding facts regarding Plaintiff's covered claim, choosing instead to hide behind palpably incorrect assumptions and conclusions of its agents, employees or consultants.

47. As of this date and ever after complying with Defendant, **LIBERTY LLOYDS** continues to be in breach of the contract.

48. **LIBERTY LLOYDS** ignored the information provided by Plaintiff and his public adjuster during the handling of the claim and did not make any additional payment to indemnify Plaintiff for the full amount of the covered damages.

49. **LIBERTY LLOYDS** failed to make any additional payment after receipt of the additional information from Plaintiff and the public adjuster.

50. The mishandling of Plaintiff's claim caused a delay in Plaintiff's ability to fully repair the Property, resulting in additional damages.

### COUNT II - VIOLATIONS OF THE TEXAS UNFAIR OR DECEPTIVE PRACTICES ACT

51. Each of the foregoing paragraphs is incorporated by reference in the following.

52. Defendant is an entity that is required to comply with Tex. Ins. Code Sections 541.051; 541.060; 541.061; and 541.151. Defendant's conduct constitutes multiple violations of the Texas Unfair or Deceptive Practices Act.

1. Misrepresenting a material fact or policy provision relating to coverage at issue;

    a. Making an untrue statement of material fact. **LIBERTY LLOYDS** through its agents, employees, or consultants prepared an estimate of damages that was misleading as to the value of damages to the subject properties stating the total damages were $150,155.50.

    b. Failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made. **LIBERTY LLOYDS** through its agents,

       employees, or consultants failed to advise Plaintiff that it failed to perform proper testing of the building and property contents in order to more accurately investigate and evaluate the damages resulting from the covered peril of fire.

    c. Making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact. **LIBERTY LLOYDS** through its agents, employees, or consultants advised Plaintiff and their public adjuster, Jay Etheredge, that it had already investigated and evaluated the damages to the subject property resulting from the July 7, 2017 fire thereby misleading the Plaintiff that a proper and complete investigation had been performed.

2. Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability had become reasonably clear. **LIBERTY LLOYDS** failed to consider Jay Etheredge's or Brian Haden's report and failed to utilize information in it.

3. Failing to promptly provide a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim. To date, Defendant has failed to provide a reasonable explanation of the basis of its denial of coverage for all of Plaintiff's damages.

4. Refusing to pay a claim without conducting a reasonable investigation with respect to the claim. **LIBERTY LLOYDS** through its agents, employees, or consultants failed to request its employees, agents, or

consultants to perform proper testing of the building and its property contents at the subject insured property in order to properly evaluate the extent and value of damages resulting from the fire event of July 7, 2017.

53. Defendant's unfair settlement practice in failing to conduct a proper and thorough evaluation, failing to perform adequate testing of the building and its property contents to more accurately investigate and evaluate the damages, failing to advise Plaintiff that it had not performed proper testing of the building and property contents and had not properly investigated and evaluated the damages, and preparing both a misleading and inaccurate damage estimate resulted in Defendant's failure to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claims, even though Defendant's liability under the policy was reasonably clear, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance.  Tex. Ins. Code Sections 541.051, 541.060 and 541.061.

## COUNT III – VIOLATIONS OF THE PROMPT PAYMENT OF CLAIMS ACT

54. Each of the foregoing paragraphs is incorporated by reference here fully.

55. Defendant's conduct constitutes multiple violations of the Texas Prompt Payment of Claims Act.  Tex. Ins. Code Chapter 542.  All violations made under this article are made actionable by Tex. Ins. Code Section 542.060.

56. Specifically, Defendant failed to accept or reject Plaintiff's claim within the time period or notify the Plaintiff why it needed more time, as required by Tex. Ins. Code 542.056.

57. Defendant failed to timely conduct a proper investigation of the damages to the subject properties resulting from a covered peril of fire of July 7, 2017 resulting in

a delay of payment of adequate insurance benefits as contracted under the insurance policy between the parties.

58. Defendant's failure to give adequate consideration to the information provided by Plaintiff's public adjuster and failure to re-inspect the subject property to re-evaluate its initial findings regarding its investigation and evaluation of damages to the subject property resulted in additional delay of payment of the claim after having sufficient information to make payment for such claim.

59. **LIBERTY LLOYDS** ignored the information provided by Plaintiff and Plaintiff's public adjuster during the handling of the claim and did not make any additional payment.

60. **LIBERTY LLOYDS** failed to make any timely additional payment after receipt of the additional information from the public adjuster.

61. **LIBERTY LLOYDS** upon receipt of the Haden Claims Services from Plaintiff, had sufficient information to make full additional payment to Plaintiff for the damages, but as of this date has failed to do so.

## COUNT IV - BREACH OF COMMON LAW DUTY OF GOOD FAITH AND FAIR DEALING

62. Each of the foregoing paragraphs is incorporated by reference here fully.

63. Defendant's conduct constitutes a breach of the common law duty of good faith and fair dealing owed to its insured pursuant to the insurance contract and in direct contradiction of the applicable industry standards of good faith and fair dealing.

64. Defendant failed to conduct a proper and thorough evaluation, failing to perform adequate testing of the building and property contents components to more accurate investigate and evaluate the damages, failing to advise Plaintiff that it had not

performed proper testing of the building and property contents components and had not properly investigated and evaluated the damages, and preparing both a misleading and inaccurate damage estimate.

65. Defendant's failure, as described above, to adequately and reasonable investigate, evaluate, and pay the benefits owed under the insurance contract, knowing full well through the exercise of reasonable diligence that its liability was reasonably clear, resulted in a breach of the duty of good faith and fair dealing.

66. **LIBERTY LLOYDS** ignored the information provided by Plaintiff's public adjuster during the handling of the claim and did not make any additional payment.

67. **LIBERTY LLOYDS** failed to make any additional payment after receipt of the additional information from the public adjuster, when **LIBERTY LLOYDS** knew or should have known liability was reasonably clear.

## COUNT V – VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT

68. Each of the foregoing paragraphs is incorporated by reference here fully.

69. At all material times herein, Plaintiff were a "consumer" who purchased insurance products and services from Defendant, **LIBERTY LLOYDS** and the products and services form the basis of this action.

70. Defendant **LIBERTY LLOYDS** has violated the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA") in at least the following respects:

    a. By accepting insurance premiums but refusing without a reasonable basis to pay benefits due and owing, engaged in an unconscionable action or course of action prohibited by DTPA § 17.50(a)(1)(3) in that Defendant **LIBERTY LLOYDS** took advantage of Plaintiff's lack of knowledge, ability, experience,

  and capacity to a grossly unfair degree, resulting in a gross disparity between the consideration paid in the transaction and the value received, all in violation of Chapters 541 and 542 of the Texas Insurance Code;

 b. Generally engaging in unconscionable courses of action while handling the claim; and/or

 c. Violating the provisions of the Texas Insurance Code, as further described elsewhere herein.

## KNOWLEDGE AND INTENT

71. Each of the acts described above, together and singularly, was done "knowingly" and "intentionally" and was a producing cause of Plaintiff's damages described herein.

## DAMAGES AND PRAYER

72. **WHEREFORE, PREMISES CONSIDERED**, Plaintiff herein, complains of Defendant **LIBERTY LLOYDS's** acts and omissions and prays that, Defendant be cited to appear and answer and that upon a final trial on the merits, Plaintiff recover from Defendant the following:

73. Plaintiff would show that all of the aforementioned acts, taken together or singularly, constitute the proximate and/or producing causes of damages sustained by Plaintiff.

74. For breach of contract by Defendant, **LIBERTY LLOYDS**, Plaintiff is entitled to regain the benefit of its bargain, which is the amount of the claims, together with attorney's fees, pursuant to Tex. Civ. & Rem. Code Sec. 38.01 *et seq*.

75. For noncompliance with the Texas Unfair or Deceptive Practices Act by Defendant, **LIBERTY LLOYDS**, Plaintiff is entitled to actual damages, which includes the loss of the benefits that should have been paid pursuant to the policy, including but

not limited to direct and indirect consequential damages, mental anguish, court costs and attorney's fees.  For knowing conduct of the acts complained of, Plaintiff asks for **three (3) times** its actual damages, pursuant to Tex. Ins. Code Ann. Section 541.152 *et seq*.

76. For noncompliance with the Texas Prompt Payment of Claims Act by Defendant, **LIBERTY LLOYDS,** Plaintiff is entitled to the amount of its claims, as well as **ten (10)** percent interest per annum post judgment interest, as allowed by law, and for any other further relief, either at law or in equity, to which it may show itself to be justly entitled, pursuant to Tex. Ins. Code Sec. 542.058 *et seq*. and 542.060 *et seq*.

77. For violation of the Common Law Duty of Good Faith and Fair Dealing by Defendant, **LIBERTY LLOYDS,** Plaintiff is entitled to actual Damages, direct and indirect consequential damages, mental anguish, and exemplary damages.

78. For noncompliance with the Texas Deceptive Trade Practices Act ("DTPA") by Defendant, **LIBERTY LLOYDS**, Plaintiff is entitled to actual damages, which includes the loss of the benefits that should have been paid pursuant to the policy, including but not limited to direct and indirect consequential damages, mental anguish, court costs and attorney's fees.  For knowing conduct of the acts complained of, Plaintiff asks for **three (3) times** its actual damages, pursuant to the DTPA and Tex. Ins. Code Ann. Section 541.152 *et seq*.

## **JURY DEMAND**

79. Plaintiff respectfully demands a **trial by jury**.

Respectfully submitted,

**PANDIT LAW FIRM, L.L.C.**

BY: /s/ *Phillip N. Sanov*
**PHILLIP N. SANOV, Bar No. 17635950**
**CARLA R. DELPIT, Bar No. 2248226**
**One Galleria Tower**
**2700 Post Oak Blvd., 21st Floor**
**Houston, Texas 77056**
**Telephone:   (832) 583-5663**
**Facsimile:    (504) 313-3820**
**Email: psanov@panditlaw.com**

**ATTORNEY FOR PLAINTIFF**
**STEVEN CARRUBA**